**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000122
18-NOV-2011
08:11 AM**

NO. CAAP-10-0000122

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ALEXA NITA RUSSELL, Plaintiff-Appellant,
v.
MILTON D. PAVAO, P.E., Manager, Hawai'i County Department of
Water Supply, ["DWS"], DOES 1-100, Defendants-Appellees.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 09-1-183K)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiff-Appellant Alexa Nita Russell (Russell), appearing *pro se*, appeals from the Final Judgment, filed on October 5, 2010, in the Circuit Court of the Third Circuit (Circuit Court).[1]

On appeal, Russell asserts that the Circuit Court erred by granting summary judgment in favor of Defendant-Appellant Milton D. Pavao, P.E., Manager, Hawai'i County Department of Water Supply (DWS). Russell contends, among other things, that there are genuine issues of material fact that preclude granting summary judgment in favor of DWS.

---

[1] The Honorable Elizabeth A. Strance presided.

## I.    Case Background

Russell's Amended Complaint alleges that on or about August 1, 2008, without notice, Hawai'i County Department of Water Supply shut off water to her personal property and residence.  Russell contends, *inter alia*, that: safe, potable water has come to her property for well over the twenty-three years she has resided there; the water has come to her property under the auspices of various water companies, most recently DWS; DWS took over the "reigns" of the County Water Commission; prior to August 2008, Russell was unaware of a 1982 Agreement between Grantor Kohala Corporation and Grantee Water Commission; water came to her property from DWS licensed facilities for over twenty-three years, and for at least a year from the Makapala Well site.  Russell demands that water be restored to her property and that she be awarded damages from DWS.

On July 8, 2010, DWS filed a Motion For Summary Judgment, asserting that Russell was required to establish that DWS had a duty to provide water service and there was no evidence that Russell was ever a DWS customer or that DWS provided water service to Russell's residence.  DWS contended that "[t]he facts show that the DWS was not providing service to Plaintiff, never provided water service to Plaintiff and was not obligated to maintain a water line it used along with Plaintiff at the time service to Plaintiff's home ceased."  DWS asserted that Russell's property received water from the Murphy Tunnel, and that in 1982, DWS's predecessor (the Water Commission) signed an Agreement with the landowner of the Murphy Tunnel to use water from Murphy Tunnel in exchange for DWS maintaining the water line.

The declarations submitted by DWS to support its motion indicate that, pursuant to the 1982 Agreement, DWS took water from the Murphy Tunnel source and maintained the water transmission line.  Under the Agreement, those like Russell who

2

were already taking water from the Murphy Tunnel transmission line "could continue to take water at the same rates and amounts as before the agreement." Initially, the transmission line ran downhill past Russell's property, from which water was tapped, and then to the DWS tank below. In 2000, DWS rerouted the transmission line so that it first "passed the Makapala tank before proceeding to supply water to those homes above the tank."

The declaration of Lawrence Beck (Beck), a civil engineer and section head for a branch of DWS, was submitted in support of DWS's summary judgment motion and states in relevant part:

> 3. Plaintiff's property is located at a higher elevation than the Department of Water Supply ("DWS") pressure service zone serving DWS customers from the DWS Makapala water system.

> 4. Plaintiff is not a customer of DWS nor has Plaintiff ever received water service from the DWS to the subject property.

> 5. DWS records show there is no service contract between the DWS and Plaintiff nor has there ever been a service contract between Plaintiff and the DWS with regard to the subject property.

> 6. Plaintiff took water from a waterline which extended makai from the Murphy Tunnel water source and passed by her home. The DWS did not construct this waterline.

> 7. If an agreement to supply water to Plaintiff existed, it was not made with the DWS.

> 8. In 1982, the DWS obtained the right to take and did take water from a water source originating at the Murphy Tunnel. The source water was already coming down the mountainside through an existing water line. This water source at the Murphy Tunnel also provided water to Plaintiff and others who were connected to the same water line from the Murphy Tunnel.

> 9. Water taken by the DWS from the water line described in the preceding paragraph entered the DWS tank through a connection to the water line. The tank is located at the very top of the DWS' Makapala water system.

> 10. Water from the DWS tank was then fed by gravity into the DWS Makapala distribution pipeline system, which is below the DWS tank.

11. Water which entered the DWS Makapala Water System served the DWS' Makapala customers. This water was first sent water through [sic] the DWS tank, then left the tank through a tank effluent pipeline into the distribution pipeline system below the DWS tank.

12. DWS customers get their water service from within the system's pressure service zone, which begins 100 feet in elevation below the elevation of the DWS tank.

13. DWS obtained the use of the line and began taking water from the Murphy Tunnel source as the result of an agreement between the owner of the property, upon which this source of the supply was located, and the Water Board. (See Exhibit "1").

14. A condition of the Agreement, which permitted the DWS to take water from the Murphy Tunnel via the subject waterline, required the DWS to maintain the line from the source of the water, high above the location of the DWS tank.

15. DWS agreed that those persons, who were already tapping off of and/or taking water from the water line bringing Murphy Tunnel water to homes served by the water line, including Plaintiff, could continue to take water at the same rates and amounts as before the agreement. (See Exhibit "1").

16. By the terms of the Agreement shown in Exhibit "1", the DWS made repairs and partially reconstructed sections of the water line coming down from the Murphy Tunnel as necessary but, again, in no instance did the DWS provide any water to Plaintiff's residence from a DWS tank, well, or distribution line.

17. The DWS did not have a service arrangement to deliver water to Plaintiff or any of the other persons who were tapped into and taking water from the subject waterline, which waterline was in place prior to the Agreement shown in Exhibit "1".

18. On or about August 13, 2007, the Department of Health ("DOH") of the State of Hawai'i notified the DWS that, due to a potential risk for surface contamination of the water, DOH would no longer permit the use of the untreated Murphy Tunnel source to supply water to the DWS Makapala water system. (See Exhibit "2").

19. On or about August 13, 2007, the DWS disconnected its connection between the waterline from the Murphy Tunnel and the DWS tank and ceased using the Murphy Tunnel source water and waterline.

20. DWS was able to switch to a groundwater source from a DWS well that had been newly outfitted. This well was meant to provide a redundant source of water supply as a back-up for the Makapala Water System. But, instead of

acting as the back-up supply source as intended, the well became the primary source of water for the DWS Makapala Water System.  The well is adjacent to the DWS tank and the water is pumped directly from the well into the DWS tank.

21.    On or about October 12, 2007, the DWS notified Pacific Plains Company LLC, (*See* Exhibit "3") the owner and successor signatory to the Agreement (Exhibit "1"), as well as the current owner of the land on which the water source (Murphy Tunnel Source) was located.  This notice provided that the DWS was no longer using the water line and tunnel source which was the subject of the Agreement referenced in Exhibit "1".

(Emphasis added.)

Also submitted in support of DWS's summary judgment motion was the declaration of William Yamamoto (Yamamoto), the Water Service District Supervisor for DWS, which states in relevant part:

5.    That in 1982 the DWS reached an agreement to take water from a source known as the Murphy Tunnel.

6.    That in 1982 a 2-inch water line extended from the Murphy Tunnel to the Makapala area of the District of North Kohala.

7.    <u>That the 2-inch water line passed by homes above the Makapala tank and provided water to these homes which were along the route of the 2-inch pipe from the Murphy Tunnel</u>.

8.    That the DWS installed a 4-inch pipe connecting the existing 2-inch line to the Makapala tank owned by DWS.

9.    That the terms of the 1982 Agreement required the DWS to maintain the existing 2-inch line from the Murphy Tunnel to Makapala.

10.    That from 1982 until 2000, the DWS made numerous repairs to the 2-inch line.

11.    <u>That in 2000 it was determined that the 2-inch line needed to be replaced and a new line was installed to bring water from the Murphy Tunnel to the homes which were supplied with water from the 2-inch line</u>.

12.    <u>That the new water line was rerouted so that it passed the Makapala tank before proceeding to supply water to those homes above the tank</u>.

13.    <u>That water to the homes above the tank came from the Murphy Tunnel source and not from the DWS Makapala Water System</u>.

14. That in the year 2007, the DWS received a notice from the State of Hawai'i Department of Health to cease using the Murphy Tunnel as a source for water to the DWS Makapala Water System.

15. That the DWS had completed an exploratory well next to the Makapala tank. As a result, the connection to the Murphy Tunnel line was closed so that the Makapala tank received water from the well rather than the Murphy Tunnel.

16. That the line from the Murphy Tunnel continued to provide water to the homes above the Makapala Tank.

17. That Plaintiff Alexa Nita Russell (hereinafter "Plaintiff") is a resident of one of the homes above the Makapala tank and continued to receive water from the Murphy Tunnel via the line which was replaced in 2000.

18. That one year after the closure of the connection from the Murphy Tunnel to the Makapala tank, Plaintiff lost water from the Murphy Tunnel line.

19. That at the time Plaintiff lost her supply of water, the DWS no longer had the right or obligation to repair the water line from the Murphy Tunnel to the homes above the Makapala tank.

20. That Plaintiff has never been a customer of the DWS.

21. That Plaintiff never received water from the DWS Makapala Water System.

22. That Plaintiff never received water from the DWS Makapala tank at any time before or after the S[t]ate of Hawai'i Department of Health required the DWS to cease using the Murphy Tunnel as a source of water from the DWS Makapala Water System.

(Emphasis added.)

The 1982 Agreement, relied upon by DWS in its Motion for Summary Judgment, provides in pertinent part:

1. That the Grantee shall repair and maintain Grantor's Source and Transmission Lines;
2. That the Grantor hereby grants to Grantee an irrevocable, exclusive license, except as hereinafter provided, to draw water from Grantor's Source and Transmission Lines for so long as the waters from Grantor's Source and Transmission Lines are required by Grantee for domestic use on the following terms:
. . .
    d. The Grantor shall not be liable for loss or injury suffered by Grantee or its customers due to insufficient or lack of water or any contamination or foreign matter in

6

the water or the failure of the Licensed Facilities, <u>provided that those persons who were tapping off of and/or taking waters from Grantor's Source and Transmission Lines prior to the effective date of this agreement may continue to take water therefrom at the same rates and amounts as each takes at the time of the execution of this license agreement, and Grantee shall not in any way be responsible for the quality, quantity, availability, potability, or suitability for consumption of the water taken from said Grantor's Source and Transmission Lines by persons other than Grantee or Grantee's customer;</u>

e.    Grantee shall not be responsible in any manner to any persons, other than Grantee or any of Grantee's customers, who withdraw or take water from the Licensed Facilities;

. . .

i.    In the event Grantee ceases to exercise its rights hereunder for a period of six (6) consecutive calendar months, this license shall terminate without any further action or notice;

j.    Grantee may add, change, alter, or eliminate the Licensed Facilities or any part thereof without the consent of the Grantor;

. . .

(Emphasis added.) Review of the Agreement also indicates, however, that there are portions of the Agreement that are not readable and other parts that appear to be missing or cut-off.

In opposition to DWS's Motion for Summary Judgment, Russell claimed, *inter alia*, that there were genuine issues of material fact and that further discovery was necessary. In her declaration, Russell attests that water came to her property from the Makapala tank and that Yamamoto hand drew a map for her of the transmission lines which shows that the line to her property came from the Makapala tank. Her declaration states, in relevant part:

2. That I have resided at the residence and property located at 52-170 Makapala Road [TMK 3-5-2-11-2] since November 14, 1986.
3. That I am currently and still residing at same stated residence and property.

7

> 4.  That I am the owner of the subject parcel, parcel 2.
>
> 5.  That clean, clear, safe, drinkable, potable County Water came to the subject parcel, parcel 2, in Makapala, always, from the Makapala Water tank up until the date of cessation by the HDWS, on or about August 1, 2007.
>
> 6.  That on August 4, 2008, I went to the Waimea HDWS office to speak to William Yamamoto.  He disclosed that parcel 6 of the subject parcel was his family land.
>
> 7.  <u>That Mr. Yamamoto drew, by hand a map of the HDWS County Water transmission lines and how they came to my home and property on subject parcel 2 in Makapala.</u>  *See* <u>Plaintiff's EXHIBIT "II".  This clearly shows drissco pipe going to parcel 2 from the Makapala Water Tank site</u>.

(Emphasis added.)  The hand drawn map attached to Russell's declaration appears to indicate that a water line enters the Makapala water tank and another line from the tank then leads to Russell's property.

## II.  Summary Judgment Analysis

We review the circuit court's grant or denial of summary judgment *de novo*.  *Hawai'i* [sic] *Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000).  The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.
>
> *Id.* (citations and internal quotation marks omitted).
>
> *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 244-45, 47 P.3d 348, 359-60 (2002) (second alteration in original).

*Kau v. City & County of Honolulu*, 104 Hawai'i 468, 473-74, 92 P.3d 477, 482-83 (2004).  We have further explained the burdens of the moving and non-moving parties on summary judgment as follows:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part is entitled to summary judgment as a matter of law.
>
> French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004) (quoting GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)) (emphasis deleted).

Stanford Carr Dev. Corp. v. Unity House Inc., 111 Hawai'i 286, 295-96, 141 P.3d 459, 468-69 (2006).

In its summary judgment motion, DWS relied on the 1982 Agreement, and DWS asserts on appeal that:

> [A]ny responsibility to maintain the pipeline which provided water both to Appellant and the DWS Makapala Tank water system, existed during the term of the Agreement to use the Murphy Tunnel as a water source . . . any responsibility to continue to maintain the pipeline for the benefit of the homeowners who received water from this source ceased on February 13, 2008, six (6) months after the termination of the Agreement.

Based on our review of the record, DWS failed to carry its burden to demonstrate that there is no genuine issue of material fact under the terms of the Agreement.

"Where the terms of a contract are ambiguous, the ambiguity raises the question of the parties' intent, which is a

question of fact that will often render summary judgment inappropriate." Wittig v. Allianz, A.G., 112 Hawai'i 195, 201, 145 P.3d 738, 744 (App. 2006); see also Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1145 (1984); Bishop Trust Co. v. Central Union Church of Honolulu, 3 Haw. App. 624, 628-29, 656 P.2d 1353, 1356-57 (1983). Here, the 1982 Agreement contains language limiting the Grantee's liability, but at the same time it states:

> those persons who were tapping off of and/or taking waters from Grantor's Source and Transmission Lines prior to the effective date of this agreement may continue to take water therefrom at the same rates and amounts as each takes at the time of the execution of this license agreement, . . .

Moreover, although DWS was apparently authorized under the Agreement to alter the water transmission line, the rerouting of the line in 2000 completely moved the line so that it no longer ran downhill past the Russell property. Rather, according to Yamamoto's declaration, the transmission line first "passed" the Makapala tank and then, somehow, water was supplied to the homes *above* the tank. It is unclear how the water was able to reach Russell's property above the tank after the rerouting of the line in 2000 and whether that affected her inability to subsequently receive water in August 2008. It is also ambiguous under the Agreement whether DWS's right to alter the transmission line was subject to the provision that those tapping off the line may continue to do so.

Because the 1982 Agreement is ambiguous, we cannot conclude as a matter of law that DWS's interpretation of the Agreement is correct, genuine issues of material fact exist as to the intent of the parties to the agreement, and the intent of the parties to the agreement "may be shown by extrinsic evidence." Bishop Trust Co., 3 Haw. App. at 629, 656 P.2d at 1357; cf. Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 124-25, 839 P.2d 10, 31 (1992) ("parol evidence regarding the parties'

10

intent as to the language used in a contract may be considered only when the contract language is ambiguous.").

Additionally, even if we were to presume that DWS had no obligation to Russell under the 1982 Agreement, summary judgment was not appropriate under the current record. Considering the facts in the light most favorable to Russell as the non-moving party, Russell's declaration and the map she asserts was hand drawn by Yamamoto created a genuine issue of material fact whether the water that came to her property was provided via DWS's Makapala tank.

Russell's basic claim is that water to her property was disrupted by DWS without notice or opportunity to be heard. Because Russell's declaration states facts which could prove her claim and refutes DWS's contention that she was not provided water by DWS, there is a genuine issue of material fact which precludes summary judgment in favor of DWS.

## III. Conclusion

Based on the above, the Final Judgment filed on October 5, 2010, in the Circuit Court of the Third Circuit, is vacated and the case is remanded for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, November 18, 2011.

On the briefs:

Alexa Nita Russell
Pro Se Plaintiff-Appellant

Michael J. Udovic
Brooks L. Bancroft
Deputies Corporation Counsel
County of Hawai'i
for Defendant-Appellee

Presiding Judge

Associate Judge

Associate Judge

11